**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel J. Pochoda, | No. CV 08-2254-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph Arpaio, in his individual and official capacity as Sheriff of Maricopa County; Deputy McGuire, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; Sergeant Powe, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; Deputy Enriquez, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; John and Jane Does 1-10; Black Entities 1-5, | |
| Defendants. | |

Sheriff Joseph Arpaio ("the Sheriff"), Sergeant Powe, and Deputies McGuire and Enriquez (collectively "the Officers") move to dismiss Plaintiff Daniel J. Pochoda's ("Pochoda") First Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Doc. # 22). This order addresses only those arguments and issues briefed by the parties. For the following reasons, the motion will be denied.

## I. Background

On this motion to dismiss, all well-pleaded facts in the amended complaint are accepted as true and all reasonable inferences from those facts are construed in the light most favorable to Pochoda. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001). Pochoda is a licensed attorney and the legal director of the American Civil Liberties Union ("ACLU") of Arizona. In that capacity, Pochoda has been the attorney of record in several cases against the Sheriff for violations of constitutional rights. The Sheriff has publically criticized the cases against him and has regularly condemned the ACLU for defending the constitutional rights of immigrants.

On November 3, 2007, a crowd gathered on the sidewalk near 36th Street and Thomas Street in central Phoenix to protest the Sheriff's policies towards immigrants. The organizer of the protest asked the ACLU to attend the demonstration because he was concerned about potential confrontation with anti-immigration protestors and Maricopa County Sheriff's Office ("MCSO") deputies. MCSO Officers Powe and Enriquez were patrolling in a nearby parking lot, armed and in uniform. They observed Pochoda park his car in the lot and walk across the lot. Pochoda approached within a few feet of the two officers and Officer Enriquez greeted him. Pochoda then approached the demonstration and spoke briefly with its organizer, Sal Reza. After that short conversation, he began walking back towards his car.

The two officers called after Pochoda. Wishing to avoid confrontation, Pochoda increased his pace towards his car to leave the property. The two officers jogged after Pochoda and commanded him to stop. Pochoda stopped and they flanked him on both sides and stood between him and his car. They questioned Pochoda for approximately five minutes. Pochoda identified himself as the legal director of the ACLU of Arizona and explained that he was observing the demonstration. He asked several times why he had been stopped. Officer Power stated that Pochoda could not park in the lot. Pochoda explained that he was trying to leave the lot before the two officers ordered him to stop.

Officer McGuire, who was dressed in plain clothes displaying no identification,

- 2 -

1 then approached and told Pochoda he could not park in the lot.  Pochoda asked him to
2 identify himself.  Instead of doing so, Officer McGuire pulled out his badge and stated:
3 "Now you'll be doing the answering.  Cuff him."  The Officers then placed Pochoda in
4 handcuffs.  Officer McGuire later explained that he ordered Pochoda handcuffed because
5 he was tired of the debate.

6       After he was handcuffed, Pochoda told the deputies that the handcuffs were
7 causing him great pain because he has an arthritic back.  Officer Powe replied that the
8 handcuffs are "not meant to be comfortable."  Pochoda also commented that a
9 misdemeanor charge generally results in release with a citation or summons and
10 appearance date.  Officer Powe replied that Officer McGuire was calling MSCO
11 headquarters to see if that would be done.  Officer McGuire spoke with Sheriff Arpaio or
12 his representative about what course of action to take.  After that conversation, Pochoda
13 was taken to the county jail and was booked on charges of criminal trespass in the third
14 degree.  He posted bail but was held for approximately eight hours thereafter.  The Sheriff
15 ordered or approved the detention of Pochoda after he had posted bail.  Pochoda was
16 acquitted of the trespassing charge on September 9, 2008.  Thereafter, Sheriff Arpaio
17 publically stated that he would expect his officers to take the same actions in the future.

18 **II. Analysis**

19     **A.  Constitutional Claims**

20       In suits pursuant to 42 U.S.C. § 1983, police officers receive qualified immunity
21 for their official actions.  Qualified immunity shields government officials from liability
22 "insofar as their conduct does not violate clearly established statutory or constitutional
23 rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.
24 800, 818 (1982).  A defendant's qualified immunity defense necessitates a two-step
25 inquiry. It is within the court's "sound discretion [to] decid[e] which of the two prongs of
26 the qualified immunity analysis should be addressed first in light of the circumstances in
27 the particular case at hand."  *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th
28 Cir. 2009) (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009)).

- 3 -

One prong of the analysis is to determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).  The other prong is to decide "whether the right was clearly established," or in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*  The Sheriff and the Officers assert a qualified immunity defense against Pochoda's claims under the First and Fourth Amendments to the United States Constitution.

### 1. Fourth Amendment Claims

Pochoda claims that Officers Powe and Enriquez violated his Fourth Amendment rights when they stopped him from leaving the parking lot.  "Under the Supreme Court's Fourth Amendment jurisprudence, an investigatory *Terry* stop is justified if there is reasonable suspicion that the suspect is engaged in, or is about to engage in, criminal activity, considering the totality of the circumstances." *United States v. Sandoval*, 390 F.3d 1077, 1080 (9th Cir. 2004).  Pochoda admits that Powe and Enriquez observed that he did not patronize any of the businesses adjoining the parking lot.  That observation was sufficient for the two officers to briefly stop and question him about his business on the property.  There could be no other way to issue Pochoda a reasonable request to leave the premises. *See* A.R.S. § 13-1502 (requiring the issuance of a reasonable request to leave the premises for criminal trespassing to occur).  The facts as alleged in Pochoda's amended complaint therefore show that Officers Powe and Enriquez had reasonable suspicion to conduct a brief investigatory stop and Count I will be dismissed.

However, once Pochoda made clear that his intention was to leave the premises, the Officers could have simply let him go on his way.  Instead, according to the facts in the amended complaint, they prevented Pochoda from leaving and then handcuffed him, which is an arrest under the Fourth Amendment. *United States v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004) ("[A]n arrest occurs . . . if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning."

- 4 -

1 (quoting *United States v. Bravo*, 295 F.3d 1002, 1011 n.8 (9th Cir. 2002))).
2 "Unsurprisingly, it is clearly established that an arrest without probable cause violates a
3 person's Fourth Amendment rights." *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107
4 (9th Cir. 1997) (citing *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 706 (9th Cir.
5 1989)). "Probable cause exists when, under the totality of the circumstances known to the
6 arresting officers (or within the knowledge of the other officers at the scene), a prudent
7 person would believe the suspect had committed a crime." *Dubner v. City & County of*
8 *S.F.*, 266 F.3d 959, 966 (9th Cir. 2001) (citing *United States v. Garza*, 980 F.2d 546, 550
9 (9th Cir. 1992)).

10      The Officers assert that they had probable cause to arrest Pochoda for criminal
11 trespass under A.R.S. § 13-1502. A person violates that provision by "[k]nowingly
12 entering or remaining unlawfully on any real property after a reasonable request to leave
13 by the owner or any other person having lawful control over such property, or reasonable
14 notice prohibiting entry." § 13-1502(A)(1). According to the allegations in the amended
15 complaint, Pochoda did not refuse a reasonable request to leave the premises. Pochoda
16 communicated his intent to leave and asked why he had been stopped. Officers Powe and
17 Enriquez stood between Pochoda and his car and did not allow him to leave. When
18 Officer McGuire approached dressed in plain clothes and told Pochoda he could not park
19 in the lot, Pochoda asked him to identify himself. Officer McGuire, with the assistance of
20 the other officers, then handcuffed Pochoda in response to his request and charged him
21 with criminal trespass. Under the totality of the circumstances as alleged in the amended
22 complaint, a prudent person would not believe that Pochoda had violated the trespassing
23 law and the Officers lacked probable cause to arrest him for that crime.

24      No reasonable officer would believe that Pochoda could be arrested for criminal
25 trespass under the alleged circumstances. Pochoda never refused a reasonable request to
26 leave the parking lot, but rather was prevented from doing so by the Officers. This is not
27 even a close case under the alleged facts. Our circuit has denied qualified immunity for
28 an arrest on trespassing charges under more ambiguous circumstances than these. *See*

- 5 -

1  *Knox*, 124 F.3d at 1108 (denying qualified immunity on summary judgment when officers
2  arrested a man for trespassing after they had ordered him to leave the property and he
3  appeared to walk away from the nearest exit). The Officers are not immune from
4  Pochoda's claim of unlawful detention and arrest.

**2. First Amendment Claim**

It is clearly established that a plaintiff successfully pleads a First Amendment violation by alleging facts showing that the defendant's "acts would chill or silence a person of ordinary firmness from future First Amendment activities," and that "such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994); *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)).

Pochoda asserts that he had a First Amendment right to observe the demonstration and that the Sheriff and the Officers aimed to deter that right, using his location as a pretext. Pochoda's observation of the demonstration against Arpaio is protected by the First Amendment. "It is well established that the right to hear—the right to receive information—is no less protected by the First Amendment than the right to speak." *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002). According to Pochoda's amended complaint, the organizer of the protest asked the ACLU to attend to support the civil rights of the demonstrators. To the extent that Pochoda was there to safeguard or support the civil rights of the demonstrators, his presence at the demonstration was all the more clearly protected by the First Amendment.

Arresting a person without probable cause is enough to intimidate a person of ordinary firmness from future First Amendment activity. The Officers observed Pochoda speaking with the protest's organizer, they knew Pochoda's position in the ACLU prior to the arrest, and they consulted the Sheriff or his representative about whether to arrest him on a misdemeanor charge. The Sheriff has allegedly condemned the demonstrations and previous lawsuits filed by Pochoda, and he allegedly ordered or approved both Pochoda's

- 6 -

1  arrest and his prolonged detention after posting bail.  Additionally, the amended
2  complaint alleges that the Officers did not stop or arrest other people in the parking lot
3  who similarly had not patronized any of the adjoining businesses because those people
4  were not observing the protest.  Such facts, in conjunction with the clear absence of
5  probable cause, create a reasonable inference that deterrence of Pochoda's First
6  Amendment activities was a substantial or motivating factor in his arrest.

7  Alternatively, Pochoda's amended complaint also alleges that the Officers arrested
8  him in retaliation for questioning their authority to stop him and for requesting Officer
9  McGuire's identification.  The Officers admit that questioning a police officer is a
10 constitutionally protected activity.  *Cf. Houston v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he
11 First Amendment protects a significant amount of verbal criticism and challenge directed
12 at police officers."); *Knox*, 124 F.3d at 1108 (noting that "demanding that the police
13 identify themselves" is "a legitimate activity").  Officer McGuire allegedly stated that he
14 arrested Pochoda because he was tired of the debate.  Again, our circuit has denied
15 qualified immunity in similar circumstances.  *Knox*, 124 F.3d at 1108 (denying qualified
16 immunity on summary judgment when officers arrested a man for trespassing after he
17 legitimately demanded that the police identify themselves).

18 Aside from their argument that probable cause for the arrest existed, which has
19 already been rejected, the Sheriff and the Officers make no argument that they mistakenly
20 but reasonably believed that their activities complied with the First Amendment.  They
21 are not immune from Pochoda's claim.

22 **B. Malicious Prosecution**

23 The Sheriff and the Officers move to dismiss Pochoda's common law claims under
24 Rule 12(b)(6).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable
25 legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"
26 *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting
27 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  With respect to
28 Pochoda's malicious prosecution claim, the Sheriff and the Officers argue only that

1  probable cause existed and that Pochoda has failed to sufficiently allege malice.  Those
2  arguments fail because, according to the foregoing analysis, probable cause was clearly
3  lacking and Pochoda plead facts that support an inference that the motivation for his
4  arrest was deterrence or retribution for First Amendment activities.

5  It bears repeating that on this motion to dismiss the Court must accept the factual
6  allegations in the amended complaint as true.  This order does not prejudge the merits of
7  this case.  It merely concludes that the facts as alleged state several claims for violations
8  of the United States Constitution and the common law of Arizona.

9  IT IS THEREFORE ORDERED that the motion to dismiss (doc. # 22) is granted
10 with respect to Count I of the First Amended Complaint and is denied in all other
11 respects.

12 DATED this 20th day of May, 2009.

_____
Neil V. Wake
United States District Judge