Joel B. Robbins, Esq. (011065)
Anne E. Findling, Esq. (010871)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona  85012
Tel: 602/285-0100
Fax: 602/265-0267
joel@robbinsandcurtin.com
anne@robbinsandcurtin.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| (1) **Daniel J. Pochoda**,<br><br>Plaintiff,<br><br>vs.<br><br>(2) **Joseph M. Arpaio,** in his individual and official capacity as Sheriff of Maricopa County; (3) **Detective Gary McGuire,** in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; (4) **Sergeant Glen Powe,** in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; (5) **Deputy J. Enriquez,** in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; (6) **GM Security and Consulting, LLC, an Arizona limited liability company;** (7) **John and Jane Does 1-10;** (8) **Black Entities 1-5,**<br><br>Defendants. | No.  CV08-2254-PHX-NVW<br><br>**SECOND AMENDED COMPLAINT** |

For his Second Amended Complaint against Defendants, Plaintiff Daniel Pochoda alleges as follows.

## **PARTIES**

1. Plaintiff Daniel Pochoda is and was at all times relevant to this Complaint a resident of Maricopa County, State of Arizona.

2. Defendant Joseph M. Arpaio is the Sheriff of Maricopa County and determines the policies and practices of the Maricopa County Sheriffs Office ("MCSO"). He is responsible for the actions of Maricopa County Sheriff's deputies including, but not limited to, Detective Gary McGuire, Deputy J. Ray, Sergeant Glen Powe, Deputy J. Enriquez, and Deputy O. Johnson. Arpaio is a state actor as that term is used in the jurisprudence of 42 U.S.C. § 1983, and is the official policymaker for the Maricopa County Sheriff's Office.

3. Defendant Detective Gary McGuire was at all times relevant to this Complaint acting as an employee and pursuant to the policies of the MCSO. He is a state actor as that term is used in the jurisprudence of 42 U.S.C. § 1983.

4. Defendant Sergeant Glen Powe was at all times relevant to this Complaint acting as an employee and pursuant to the policies of the MCSO. He is a state actor as that term is used in the jurisprudence of 42 U.S.C. § 1983.

5. Defendant Deputy J. Enriquez was at all times relevant to this Complaint acting as an employee and pursuant to the policies of the MCSO. He is a state actor as that term is used in the jurisprudence of 42 U.S.C. § 1983.

6. Defendant GM Security and Consulting, LLC, ("GM Security") is an Arizona limited liability company owned and operated by Defendant Gary McGuire.

7. GM Security is responsible for the acts and omissions of its agents and employees under the doctrine of respondeat superior.

8. Defendants John and Jane Does 1-10 and/or Black Entities 1-5 made the decision to jail Daniel Pochoda on November 3, 2008, and/or to detain Daniel Pochoda in jail for more than ten hours, as well as otherwise contributed in a manner currently unknown to the wrongful acts perpetrated against Plaintiff in this matter.

## **JURISDICTION AND VENUE**

9. This action arises under the Constitution of the United States, particularly the First, Fourth, and Fourteenth Amendments and under the laws of the United States, particularly the Civil Rights Act, 42 U.S.C. § 1983.

10. This Court has jurisdiction over Plaintiff's federal civil rights claim pursuant to 28 U.S.C. § 1331, 28 U.S.C. 1343, and 28 U.S.C. §1441.

11. This Court has supplemental jurisdiction of Plaintiffs' state law causes of action pursuant to 28 U.S.C. § 1367(c).

12. The acts complained of occurred within Maricopa County, State of Arizona. All defendants reside in Arizona. Thus, venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).

13. As to Plaintiff's claims under Arizona state law, Plaintiff served Defendants with a notice of claim pursuant to A.R.S. §12-821.01 which complied in all ways with the statute, which was timely served and which is deemed denied by operation of statute.

## **FACTS COMMON TO ALL COUNTS**

### **Factual Background**

14. Plaintiff Daniel Pochoda is, and was at all times relevant to the claims raised herein, a licensed attorney and the legal director of the American Civil Liberties Union of Arizona ("AzACLU").

15. In that capacity, Plaintiff has been the attorney of record in several cases against Defendant Arpaio for violations of constitutional rights. Arpaio publicly criticized the cases against him and has regularly condemned the ACLU for defending the constitutional rights of immigrants. By virtue of this litigation, Defendant Arpaio is acquainted with Plaintiff and would recognize his name.

16. During the fall of 2007, individuals opposing the anti-immigration policies and practices of Defendant Arpaio and the MCSO gathered publicly to express their views on this important issue of public policy.

17. Defendant Arpaio has made public statements indicating his disdain for individuals expressing views in opposition to Defendant Arpaio's anti-immigration policies and practices. Defendant Arpaio has also made public statements that he would act to stop public demonstrations of opposition, including the statement: "All the activists must stop their protest before I stop enforcing the law in that area."

18. Defendants McGuire, Powe, and Enriquez were aware of Defendant Arpaio's opposition to those involved in the protests in opposition to Defendant Arpaio's anti-immigration policies and practices.

19. A lawful public protest was planned for November 3, 2007, in the area of 34th Street and Thomas Road against the practices of Defendant Arpaio and the MCSO in arresting people of Hispanic descent, day laborers, and others in the area.

20. The American Civil Liberties Union (ACLU) of Arizona had been asked by the organizer of the demonstration to attend because of his concern of a potential confrontation with anti-immigrant protestors and with MCSO deputies.

21. Sometime prior to November 3, 2007, Defendant McGuire, through GM Security and Consulting, LLC, contracted with Pruitt's Furniture and/or its corporate principals to provide security services using off-duty Maricopa County Sheriff's Office sworn officers on property located at 34th Street and Thomas Road in Phoenix.

22. Pruitt's Furniture and/or its corporate principal agreed to pay GM Security for these security services.

23. Defendant Arpaio authorized and endorsed the use of MCSO officers including allowing the use of MCSO vehicles and MCSO posse members to support off-duty work by sworn officers.

24. Although being paid under a private contract, the MCSO sworn officers were working under the supervision and direction and under the authority of Defendant Arpaio and the MCSO as sworn law enforcement officers.

25. Defendant Arpaio is responsible for the conduct of officers providing off-duty law enforcement such as those services provided by Defendants Powe, Enriquez, and McGuire under contract through GM Security and Consulting, LLC.

26. Defendant Arpaio is also responsible for the conduct of Maricopa County Sheriff's Office Posse members supporting or participating in law enforcement activities.

27. On November 3. 2007, Defendants Powe, Enriquez and McGuire, and other MCSO personnel and posse members, were providing off-duty security services for Pruitt's Furniture, a retail store at 34th Street and Thomas Road in Phoenix, under contract through GM Security and Consulting, L.L.C.

28. The MCSO personnel were acting under color of law and pursuant to their authority as sworn officers of the MCSO and Defendant Arpaio. They were armed and most were in uniform.

29. On November 3, 2007, at approximately 12:40 p.m., Plaintiff was driving east on Thomas Road toward 34th Street and observed the anti-Arpaio demonstrators on the South sidewalk between 34th and 35th Streets.

30. To the south of the demonstrators was a large parking lot containing Pruitts' furniture store at the 35th Street side and several smaller stores. The lot was approximate half full.

31. Because there was no parking available on Thomas Road and Plaintiff saw no signs restricting parking or access, Plaintiff made a right turn onto 34th Street and then a left turn into the parking lot. Plaintiff parked in one of several empty spaces in front of the smaller stores near 34th Street.

32. As he exited the driver's side door facing east, Plaintiff observed at least six or seven uniformed MCSO deputies in the lot. Plaintiff left his car and walked to observe the demonstration on the sidewalk of Thomas Street.

33. Plaintiff was observed by deputies parking his car and walking from the car away from the stores and across the lot.

34. Plaintiff observed no signs restricting parking or restricting pedestrian access to and through the parking lot. No one indicated to Plaintiff that he could not park or was in any way prohibited from parking in the lot.

35. One of the deputies, Defendant Enriquez, was within a few feet of Plaintiff as he reached the north area of the lot away from the stores. Enriquez said, "Hello," to Plaintiff. Although Plaintiff's movements were clearly visible, neither Defendant Enriquez nor any other uniformed personnel told Plaintiff that he could not park or walk in the lot.

36. Plaintiff approached the demonstration and spoke briefly with the organizer, Sal Reza, an individual known by Defendant Arpaio to be opposed to Arpaio's anti-immigration policies. However, due to his concern for leaving his pet dog alone, Plaintiff stayed for only a brief period of time before attempting to return to his car and exit the area.

37. As Plaintiff approached his car after observing the demonstration, Deputies Powe and Enriquez, both armed and in uniform, called after him from behind.

38. Wanting to avoid any delay or conflict, Plaintiff increased the pace toward his car in order to leave the property; he would have reached his car in a matter of seconds had the officers not put themselves between Plaintiff and his car.

39. At the time that Defendants Powe and Enriquez stopped and detained Plaintiff, no officer could have reasonably suspected that Plaintiff was committing or had committed a criminal offense.

40. At the time that Defendants Powe and Enriquez stopped and detained Plaintiff, Plaintiff had committed no criminal offense and had only exercised his First Amendment right to observe a lawful public demonstration.

41. The information that Defendants Powe and Enriquez had prior to stopping and detaining Plaintiff was that he had observed the demonstration and that he was attempting to leave.

42. There was no lawful basis or individualized suspicion for the detention and subsequent questioning of Plaintiff. The continuing violations by Defendants, including handcuffing, arresting, and jailing Plaintiff, were a direct result of the arbitrary command to stop.

43. Defendants Powe and Enriquez jogged after Plaintiff as he attempted to leave, yelled at him to "Stop," and stood between Plaintiff and his car.

44. Plaintiff obeyed the officers' order to stop. Once stopped, Plaintiff did not feel free to leave. Neither Defendant Powe nor Defendant Enriquez rescinded the order to stop nor allowed Plaintiff to return to his car to leave at any time prior to his arrest.

45. There was no reasonable suspicion of criminal activity to stop Plaintiff, nor probable cause to arrest Plaintiff. All of the acts described below and the resulting harms to Plaintiff, were directly and causally related to the arbitrary and illegal stop made by Defendants Powe and Enriquez.

46. During the stop and detention, Defendant Powe questioned Plaintiff for approximately five minutes. In answer to Defendant Powe's first question, Plaintiff indicated that he was on the lot as a private citizen. In answer to the second question mentioning the demonstration, Plaintiff identified himself as the Legal Director of the ACLU of Arizona and explained that he was observing the demonstration.

47. Plaintiff asked Defendants Powe and Enriquez several times why he had been stopped after leaving the demonstration. Plaintiff had observed another person walking through the parking lot who was not stopped nor questioned despite being seen by MCSO personnel in the lot; that person had not attended or observed the demonstration.

48. In addition, persons who also did not shop in any of the stores served by the parking lot were not questioned about parking in or walking through the lot by Defendants Powe or Enriquez unless they were known to have attended or observed, or appeared to be planning to attend or observe, the anti-Arpaio demonstration.

49. During the questioning and discussion with Defendant Powe noted above, Plaintiff was never ordered to leave the parking lot by these two Defendants or anyone else, nor told that he would be arrested if he did not; Plaintiff never saw and did not know the owner of the property.

50. At one point, Powe stated that Plaintiff could not park in the lot. Plaintiff stated that he had been on his way out and asked why he was stopped while leaving the property. This back and forth conversation lasted for approximately five minutes.

51. During that time, an individual dressed in plain clothes and wearing a softball shirt and cap approached. Plaintiff did not know the individual nor did he identify himself.

52. This individual told Plaintiff that he could not park in the lot. Plaintiff then asked the individual to identify himself; the individual was later identified as Detective McGuire.

53. In response to Plaintiff's question Defendant McGuire pulled his badge from under his shirt and stated to Plaintiff: "Now you will be doing the answering. Cuff him." Defendant Enriquez assisted by Defendant Powe, then pushed Plaintiff's hands behind his back, and used metal handcuffs on Plaintiff.

54. At the time of his arrest, Plaintiff had committed no criminal offense nor did Defendants McGuire, Enriquez, and Powe have probable cause to believe that Plaintiff had committed any offense.

55. Defendant McGuire later explained that he acted because he was tired of the "debate" between Plaintiff and the other deputies.

56. Plaintiff was charged with violating A.R.S. § 13-1502(A) (1), which provides: "A person commits criminal trespass in the third degree by [k]nowingly entering or remaining unlawfully on any real property after a reasonable request to leave by the owner or any other person having lawful control over such property, or reasonable notice prohibiting entry."

57. Defendants McGuire, Enriquez, and Powe never made a "reasonable request" that Plaintiff leave. Further, which they did not, by their conduct they prevented him from leaving. Indeed had they had not stopped Plaintiff he would have exited without incident.

58. Plaintiff did not "knowingly enter or remain unlawfully." At no point prior to the handcuffing and arrest of Plaintiff did Powe or Enriquez rescind the order to stop, nor did either move in order to clear a path to his car.

59. There was no lawful basis or probable cause for the order to arrest. Plaintiff had not violated any laws and was in the midst of asking about why he was forcibly stopped just before reaching his car and leaving the lot.

60. Said Defendants were motivated by the political desires of Defendant Arpaio, the private agenda of Pruitt's Furniture, or both.

61. There was no justification or legal basis for placing Plaintiff in steel handcuffs with his arms behind his back. Plaintiff was charged with a misdemeanor Criminal Trespass in the 3rd Degree and posed no threat; there was no need for the use of any force or restraint.

62. Prior to the handcuffing and arrest of Plaintiff, Defendants Powe, Enriquez and McGuire were aware that he was an attorney with the ACLU.

63. Plaintiff was in great physical pain as a result of the handcuffing. Plaintiff has a seriously arthritic upper back and discs, and had recently had an attack requiring a visit to a specialist and resulting prescription pain killers and ongoing physical therapy.

64. Plaintiff told the deputies that as a result of his recent diagnosis and continuing treatment for an arthritic back, the handcuffing was causing great pain. Powe replied that they were "not meant to be comfortable."

65. After being handcuffed Plaintiff told the three Defendants presence of the concern for his dog who would be alone and was a rescue dog who reacted very badly to that situation. Plaintiff stated that he took any misdemeanor charge seriously as a member

1  of the Bar, but that the level and nature of the charge generally would result in release
2  with a citation or summons and appearance date.

3       66.    Defendant Powe told Plaintiff that Defendant McGuire was calling
4  "headquarters" to see if that would be done. On information and belief, Defendant
5  McGuire spoke to Defendant Arpaio or a high ranking MCSO official who passed on
6  Arpaio's decision. As a result of that decision Plaintiff was taken to the Fourth Avenue
7  jail and not released with a summons.

8       67.    There was no justification for booking and jailing Plaintiff on the Third
9  Degree misdemeanor charge. As a result of this decision, and the decision by Defendants
10 to keep Plaintiff in jail for ten hours including eight hours after the scheduled $150 bail
11 was posted, Plaintiff suffered great pain and anxiety. These harms were exacerbated by
12 his back condition and confiscation of prescribed medications.

13      68.    Defendant Arpaio was aware of the time of booking and confinement in the
14 jail, and on information and belief ordered or agreed with the decision to not release
15 Plaintiff until after midnight on November 4th approximately eight hours after bail was
16 posted.

17      69.    Plaintiff had not previously been arrested or convicted of any crime, nor
18 jailed or handcuffed by any law enforcement agency.

19      70.    The actions by Defendants McGuire, Powe, and Enriquez described above
20 were malicious and taken in reckless disregard for the rights and well being of Plaintiff.
21 Punitive damages are required as punishment and to deter Defendants from repeating
22 these reckless, dangerous and illegal acts.

23      71.    After the acquittal of Plaintiff on the misdemeanor charge on September 9,
24 2008, Arpaio publicly stated his disagreement with the verdict and that he would expect
25 his officers to take the same actions in the future.

26      72.    In all matters alleged in this complaint, Defendants McGuire, Powe, and
27 Enriquez were acting in concert.

28

73. Plaintiff endured pain, suffering and anxiety as a result of the actions of Defendants as described above.

74. Plaintiff's criminal defense on the misdemeanor charge resulted in payment of $20,000 to his defense attorneys.

## CLAIMS FOR RELIEF

### Count 1 – Defendants McGuire, Powe, Enriquez and GM Security
### Unlawful Seizure – Detention and Arrest

75. As described above, Defendants McGuire, Powe and Enriquez, while acting as agents for both the MCSO and GM Security, detained and arrested Plaintiff without probable cause in violation of Plaintiff's constitutional rights

76. Not only had Plaintiff not committed any criminal act, the acts of Defendants McGuire, Powe, and Enriquez in preventing Plaintiff from leaving the property resulted in public humiliation, discomfort from restraint, needless restraint of liberty within the jail, and pain from delay in access to medications.

77. Plaintiff's arrest violated the Fourth Amendment right to be free from unreasonable searches and seizures.

78. As a direct and proximate result of the breach of Plaintiff's Constitutional rights by Defendants Powe, Enriquez, and GM Security, Plaintiff sustained damages, including personal injury, economic loss, loss of enjoyment of life, and psychological injury, for which he is entitled to redress pursuant to 42 U.S.C. § 1983.  He is also entitled to exemplary damages against Defendants under § 1983.

### Count 2 – Defendants McGuire, Powe, Enriquez, and GM Security
### Retaliation (First Amendment)

79. At the time of his initial unlawful stop and detention, Plaintiff was exercising his First Amendment right to observe a lawful public demonstration.

80. Furthermore, at the time of his unlawful arrest, Plaintiff was exercising his First Amendment right to inquire of Defendants McGuire, Powe, and Enriquez about their authority and reasons for the stop.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

81. The conduct of Defendants Powe and Enriquez in stopping and questioning Plaintiff and of Defendants McGuire, Powe, and Enriquez in arresting Plaintiff, in response to the exercise of his First Amendment rights of free speech and association is cognizable under 42 U.S.C. § 1983.

82. As a direct and proximate result of the breach of Plaintiff's First Amendment rights by Defendants McGuire, Powe, and Enriquez, Plaintiff sustained damages, including personal injury, economic loss, loss of enjoyment of life, and psychological injury, for which he is entitled to redress pursuant to 42 U.S.C. § 1983. He is also entitled to exemplary damages against Defendants under § 1983.

## Count 3 – All Defendants
## Malicious Prosecution (State Law)

83. Defendants McGuire, Powe, and Enriquez wrongfully initiated a criminal prosecution against Plaintiff. There was no probable cause for the prosecution, and Defendants McGuire, Powe, and Enriquez initiated the prosecution with malice. As such, Defendants McGuire, Powe, and Enriquez are liable to Plaintiff for the tort of malicious prosecution.

84. The prosecution against Plaintiff terminated in Plaintiff's favor on September 9, 2008, when Plaintiff was acquitted on all charges.

85. Defendant Sheriff Arpaio is responsible for the actions of his individual officers and employees under the doctrine *respondeat superior*.

86. **Defendant GM Security and Consulting, LLC, is responsible for the actions of its employees under the doctrine of respondeat superior.**

87. As a direct and proximate result of the malicious prosecution of Plaintiff as described herein, Plaintiff sustained serious and substantial injury, for which he is entitled to redress from said Defendants.

88. As a direct and proximate result of Defendants' breach of Plaintiff's constitutional rights, Plaintiff sustained damages, including personal injury, economic loss, loss of enjoyment of life, and psychological injury.

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

A. For general damages in an amount to be specified at trial;

B. For special damages in the amount of $20,000.00 for his attorneys' fees incurred in defending himself in the criminal case;

C. For reasonable costs and attorneys fees pursuant to 42 U.S.C. § 1988 and as otherwise permitted by law;

D. For pre- and post-judgment interest to the extent permitted by law;

E. For exemplary damages; and

F. For such other relief as this Court deems appropriate.

DATED this 10th day of August, 2009

**ROBBINS & CURTIN, p.l.l.c.**

By:  s/Anne E. Findling
    Joel B. Robbins
    Anne E. Findling
    301 E. Bethany Home Road, Suite B-100
    Phoenix, Arizona 85012
    *Attorneys for Plaintiff*

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 285-0707 ♦ Fax: (602) 265-0267

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy J. Casey, Esq.
Schmitt, Schneck, Smyth & Herrod, P.C.
1221 East Osborn Road, Suite 105
Phoenix, Arizona 85014-5540
*Attorneys for Defendants*

By   s/ Trisha Haynes
[I:…Pochoda, Daniel\Pleadings\Second Amended Complaint]