**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel J. Pochoda,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Joseph M. Arpaio, in his individual and official capacity as Sheriff of Maricopa County; Detective Gary McGuire, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; Sergeant Glen Powe, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; Deputy J. Enriquez, in his individual and official capacity as a deputy with the Maricopa County Sheriff's Office; GM Security and Consulting, LLC, an Arizona limited liability company; John and Jane Does 1-10; Black Entities 1-5,<br><br>　　　　Defendants. | No. CV-08-2254-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendant GM Security and Consulting, LLC's ("GM Security") Motion for Summary Judgment (doc. # 79).

**I.    Legal Standard for Summary Judgment**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd.*

1 *v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.* The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied. *Id.*

1  **II.    Facts**

2          The following facts are either undisputed or framed in a light most favorable to

3  Plaintiff Daniel Pochoda, the nonmoving party.  This suit arises from Pochoda's

4  November 3, 2007 arrest in a parking lot on the corner of 35th Street and Thomas Road in

5  Phoenix, Arizona.  The parking lot services several stores, including a furniture store by

6  the name of Pruitt's Furniture and several smaller stores to the west of Pruitt's.

7          In 2007, day laborers were congregating in the parking lot in front of Pruitt's,

8  hoping to be hired by individuals and small companies for odd jobs.  Because Pruitt's

9  considered the day laborers bad for business, it complained to the Maricopa County

10 Sheriff's Office ("MCSO") and hired Defendant GM Security to keep the parking lot

11 clear for customers.  GM Security is a private security company partly owned and

12 managed by Defendant Gary McGuire, who is also an MCSO deputy sheriff.  Pruitt's

13 contract with GM Security states that GM Security "utilizes police officers and deputy

14 sheriffs as independent contractors to provide security detail and/or traffic control for

15 private/public organizations with security needs."  The security guards wear their law

16 enforcement uniforms and otherwise display all the trappings of police officers.

17         A group of people subsequently began to protest the MCSO's immigration policies

18 on the sidewalk near Pruitt's on a weekly basis.  The protests soon gained media

19 attention.  Concerned with the potential for confrontation and/or violations of the

20 protestors' civil rights by MCSO officers, Salvador Resa, an organizer of the protests,

21 contacted Pochoda, a licensed attorney and the legal director of the Arizona chapter of the

22 American Civil Liberties Union ("ACLU").  In his capacity as legal director of the

23 ACLU, Pochoda has served as attorney of record in several cases against Sheriff Arpaio

24 for violations of constitutional rights.  Resa therefore asked Pochoda to stop by and

25 observe the protests.

26         One such protest was scheduled for November 3, 2007.  That day, on his way

27 home from running errands, Pochoda drove to the site of the protest, entered the parking

28 lot that services Pruitt's and various other stores, and parked in front of several small

| | |
|---|---|
| 1 | stores to the west of Pruitt's. At no point did he see any "no trespassing" signs. As he |
| 2 | exited his vehicle and began walking through the parking lot toward the demonstration, |
| 3 | he observed what appeared to be several uniformed police officers in the lot. Two of the |
| 4 | uniformed officers were Defendants Powe and Enriquez, who are MCSO police officers |
| 5 | but were off-duty and working as security guards for GM Security at the time. As |
| 6 | Pochoda walked by, Enriquez greeted him. At that time, Enriquez believed Pochoda was |
| 7 | walking through the parking lot to go around the demonstration, which was blocking the |
| 8 | sidewalk. However, Pochoda approached the demonstration, where he spoke briefly with |
| 9 | Resa and observed for no more than five minutes. He then began walking back to his car. |
| 10 | As Pochoda was walking toward his car, Powe and Enriquez, who had observed |
| 11 | him emerge from the demonstration, called out to him. Seeking to avoid confrontation |
| 12 | and to return home to his dog, Pochoda increased his pace. When he was 20 to 25 feet |
| 13 | away from his car, Powe and Enriquez ordered him to stop, stood between him and his |
| 14 | car, and asked why he was there. Pochoda responded that he was there as a private |
| 15 | citizen. When they again asked why he was there, Pochoda retrieved two of his ACLU |
| 16 | business cards, handed them to Powe and Enriquez, and explained that he was there "to |
| 17 | see and observe the demonstration." Powe slapped the business card out of his hand and |
| 18 | asked Pochoda if he planned to shop there. Pochoda responded, "No," at which point |
| 19 | Powe said, "You can't be here." |
| 20 | Unclear as to what Powe meant, Pochoda informed Powe and Enriquez that he was |
| 21 | just leaving, asked why they had stopped him when he was in the process of leaving, |
| 22 | questioned their authority to stop him, and tried to clarify what he had done wrong. |
| 23 | Specifically, he asked whether he was not allowed to walk in the parking lot, park in the |
| 24 | parking lot, or both, because he wanted to advise the demonstrators accordingly. Powe |
| 25 | and Enriquez made no effort to move out of his way and never asked him to leave. |
| 26 | Rather, they merely repeated, several times, "You can't be here." |
| 27 | At some point, McGuire, who had overheard the exchange, approached the group. |
| 28 | He was not in uniform. When Pochoda asked him for identification, he produced his |

badge and then said, "Now you will be answering the questions. Cuff him." After Enriquez handcuffed Pochoda, McGuire informed him he was under arrest for trespassing, placed him in a patrol car, and transported him to the Fourth Avenue jail in Phoenix.

Pochoda was charged with criminal trespass in the third degree under A.R.S. § 13-1502 but was ultimately acquitted on September 9, 2008. On November 3, 2008, he filed a civil complaint in state court against all Defendants except GM Security, asserting various state and federal claims arising from his November 3, 2007 arrest. After the action was removed to this Court on December 10, 2008, Pochoda amended his original complaint twice, once after the Court granted Defendants Arpaio, McGuire, Powe, and Enriquez's first motion to dismiss, and a second time to add GM Security as a Defendant for the first time. GM Security now moves for summary judgment on all claims.

### III. Analysis

As an initial matter, the Court notes that GM Security and Defendant McGuire are represented by the same counsel. In its Scheduling Order (doc. # 65), the Court specified that parties represented by the same counsel may file only one motion for summary judgment. (*Id.* at ¶7(b).) While GM Security has moved for summary judgment, McGuire has not. Therefore, the Court will address only those arguments that pertain strictly to GM Security and will reserve judgment on the existence of probable cause, which implicates the liability of both GM Security and McGuire, until they jointly move for summary judgment, should they choose to do so.

### A. 42 U.S.C. § 1983

GM Security moves for summary judgment on Pochoda's § 1983 claims on the ground that GM Security, a private company, cannot be liable under § 1983, either vicariously or directly, as a matter of law. In his Response, Pochoda clarified that while his state law claim of malicious prosecution is predicated on a theory of vicarious liability as to GM Security, he seeks to impose only direct liability on GM Security under § 1983.

Section 1983 provides that any "person" who acts under color of state law to cause the deprivation of another person's "rights, privileges, or immunities" secured by the Constitution or federal laws will be liable to that injured person. 42 U.S.C. § 1983. The term "person" includes entities. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, because private entities typically do not act under color of state law, a plaintiff seeking to impose liability on a private entity under § 1983 must prove both (1) that the entity acted under color of state law and (2) that it deprived the plaintiff of a federal right. *See Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989).

### 1. Color of State Law

Though Pochoda did not address whether GM Security was acting under color of state law the day he was arrested, the facts indicate that it was. A private entity is a state actor if there is a sufficiently "close nexus" between the state and the challenged action that the action "may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 954-55 (9th Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Factors to consider include (1) whether the entity is "mostly comprised of state institutions," (2) whether state actors "dominate decision making" of the entity, (3) whether the entity's funds are "largely generated by state institutions," and (4) whether the entity is "acting in lieu of a traditional state actor." *Id.* at 955.

The available evidence reveals that GM Security is at least half comprised of state actors. Its corporate record, filed with the Arizona Corporation Commission, indicates it has only two members, one of whom is Defendant McGuire. That McGuire is and was a state actor when he arrested Pochoda is beyond reasonable debate because he is an MCSO police officer and so identified himself shortly before arresting Pochoda.

The evidence also establishes that McGuire, a state actor, is predominantly responsible for GM Security's decision-making. First, GM Security's contract with Pruitt's includes only McGuire's name and contact information, which appears in the caption directly below the title "GM Security and Consulting, LLC". The contract also

refers to McGuire as GM Security's founder and prohibits disclosure of GM Security's rates without McGuire's consent. Second, it was McGuire who directed Enriquez to handcuff Pochoda and who informed Pochoda that he was under arrest. There is no evidence that he was merely executing orders from another GM Security managing member or that he obtained approval from any other GM Security managing member before deciding to arrest Pochoda.

As for the source of GM Security's funds, GM Security's contract with Pruitt's states that GM Security "utilizes police officers and deputy sheriffs as independent contractors to provide security detail and/or traffic control for private/public organizations with security needs." Though its customers are not necessarily state actors, the police officers with whom it subcontracts undoubtedly are. GM Security's income appears to be derived solely from the sale of those police officers' services.

Finally, in this case, GM Security was acting in lieu of the MCSO, a traditional state actor. In fact, there is no meaningful distinction between GM Security and the MCSO as far as this case is concerned. Both entities are primarily engaged in the business of law enforcement, both are managed by state actors, and both pay police officers to use the full panoply of state powers conferred on them by virtue of their offices. As such, GM Security is markedly different from a private business, such as Pruitt's or a department store, that hires off-duty police officers as security guards to maintain order on the premises. While GM Security is in the business of security and law enforcement and is managed primarily by state actors, a privately-owned store is not. The totality of the circumstances therefore supports the conclusion that GM Security was acting under color of state law at all times relevant to this action.

### 2. Deprivation of a Federal Right

GM Security maintains in the alternative that it is entitled to summary judgment because Pochoda has failed to demonstrate that it deprived him of a federal right. To establish a deprivation of a federal right by an entity, a plaintiff can demonstrate (1) that the entity had a "longstanding practice or custom" that caused the violation, (2) that the

employee whose actions caused the violation was, as a matter of law, "a final policymaking authority 'whose edicts or acts may fairly be said to represent official policy,'" or (3) that an employee with final policymaking authority "either delegated that authority to, or ratified the decision of" the employee whose actions caused the violation. *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).

Pochoda contends that McGuire's actions are imputed to GM Security because McGuire is GM Security's final policymaker. Whether an actor is a final policymaker of a particular entity is a question of state law. *Praprotnik*, 485 U.S. at 124; *Ulrich*, 308 F.3d at 985. GM Security is an Arizona-based limited liability company. According to A.R.S. § 29-681(A):

> Unless the articles of organization provide that management of [a] limited liability company is vested in one or more managers, management of the limited liability company is vested in the members, subject to any provision in an operating agreement restricting or enlarging the management rights or responsibilities of one or more members or classes of members.

As one of GM Security's only two members, and in the absence of evidence of an operating agreement restricting his managerial authority, McGuire is certainly one of GM Security's policymakers. That he is GM Security's final and perhaps only policymaker is evident from the above discussion regarding whether GM Security is a state actor. GM Security's contract with Pruitt's includes only McGuire's name and contact information, refers to McGuire as GM Security's founder, and prohibits disclosure of GM Security's rates without McGuire's consent. Moreover, there is no evidence that anyone other than McGuire made the decision to arrest Pochoda. Therefore, GM Security is liable under § 1983 for McGuire's actions to the extent he deprived Pochoda of a federal right.

**B. False Imprisonment (State Law)**

Though GM Security has moved for summary judgment with respect to a purported state law false imprisonment claim, as a preliminary matter, there appears to be some confusion as to whether Pochoda has asserted a state law claim of false

imprisonment in the first place. The Second Amended Complaint (doc. # 46) includes three counts. Count 3 unmistakably alleges malicious prosecution under Arizona law. Count 2, titled "Retaliation (First Amendment)", clearly alleges retaliation in violation of Pochoda's First Amendment rights, redressable under 42 U.S.C. § 1983. The source of the confusion is Count 1, vaguely titled "Unlawful Seizure–Detention and Arrest". The claim appears to arise solely under 42 U.S.C. § 1983, because the first paragraph within Count 1 alleges that Defendants McGuire, Powe, and Enriquez "detained and arrested Plaintiff without probable cause in violation of Plaintiff's constitutional rights" and the fourth paragraph seeks relief specifically under § 1983. It makes no express reference to false imprisonment under Arizona law.

However, Count 1 will liberally be read to state both a claim of false imprisonment under Arizona law and a claim under § 1983. For one, the title "Unlawful Seizure–Detention and Arrest" fairly encompasses both. Furthermore, allowing Pochoda to proceed on the state law claim will result in no unfair prejudice or surprise to GM Security, who has moved for summary judgment on the claim and has acknowledged that Pochoda has described the claim as one for false imprisonment in previous filings. The Court will therefore consider GM Security's challenge to the claim.

GM Security maintains that to the extent a false imprisonment claim is recognized, it is barred, at least as to GM Security, by Arizona's one-year statute of limitations for false imprisonment. *See* A.R.S. § 12-541. Pochoda does not dispute that GM Security was added as a defendant after the limitations period had run. However, he contends that the claim is nevertheless timely because it relates back to the date of the original complaint pursuant to Fed. R. Civ. P. 15(c)(1), which provides in pertinent part:

> An amendment to a pleading relates back to the date of the original pleading when:
> ...
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 4(m) requires the summons and original complaint to be served within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m).

Rule 15(c)(1)(C) therefore delineates three conditions for relation back: (1) the amended claim must arise from the same conduct, transaction, or occurrence described in the original pleading, (2) the party to be added must have "received such notice of the action that it will not be prejudiced in defending on the merits" within 120 days of the filing of the original complaint, and (3) the party to be added must have known or should have known, within 120 days of the filing of the original complaint, "that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See Krupski v. Costa Crociere S.P.A.*, 560 U.S. __ (2010).

In this case, the first condition is met because the false imprisonment claim clearly arises from the same occurrence as that set out in the original complaint. With respect to the second condition, Pochoda argues that because McGuire owns GM Security, his knowledge of the instant action may be imputed to GM Security. The Ninth Circuit has recognized that notice may be imputed from a named defendant to an unnamed defendant where there is a "community of interest" and where the parties "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994). As one of only two managing members of GM Security, McGuire is sufficiently related to GM Security in terms of business operations that notice to McGuire may fairly be imputed to GM Security.

As for the third condition, the Supreme Court recently emphasized that the relevant inquiry is not what Pochoda knew or should have known, but rather whether GM Security knew or should have known that it would have been sued but for a mistake concerning its identity. *Krupski*, 560 U.S. at __. The focus is properly on what information was available to GM Security, either through the complaint, or through Pochoda's own conduct. *Id.* Pochoda's knowledge is relevant "only if it bears on [GM Security's] understanding of whether [Pochoda] made a mistake regarding the proper party's identity." *Id.*

The term "mistake" encompasses erroneous beliefs, misconceptions, and even wrong actions resulting from inadequate knowledge. *See id.* (quoting Black's Law Dictionary 1092 (9th ed. 2009) and Webster's Third New International Dictionary 1446 (2002)). Therefore, a plaintiff's failure to sue a prospective defendant due to lack of knowledge of that defendant's existence appears to fit neatly within the scope of "a mistake concerning the proper party's identity." Mistakes are not limited, however, to lack of knowledge of a prospective defendant's *existence. Id.* Notwithstanding awareness of a prospective defendant's existence, a plaintiff may have no knowledge of, or may misunderstand, the role the prospective defendant played in the occurrence giving rise to the claim. *Id.* By the same token, when the complaint and/or the plaintiff's conduct "compel the conclusion that the failure to name the prospective defendant . . . was the result of a fully informed decision," there is no mistake of which the prospective defendant knew or should have known. *Id.*

Here, Pochoda filed his original complaint in state court on November 3, 2008, exactly one year after his arrest. The 120-day period provided for in Rule 4(m) ended on or around March 3, 2009. The question is therefore whether GM Security knew or should have known, on or before March 3, 2009, that it would have been named as a defendant but for a mistake concerning its existence or role in the underlying events. Though the original complaint names McGuire, Powe, and Enriquez as defendants in their individual and official capacities as *MCSO deputies* and is riddled with allegations that they were

- 11 -

acting under state law, it does not reflect a deliberate choice not to sue GM Security. Specifically, it includes no indications that Pochoda (1) was aware that GM Security existed or (2) knew that McGuire, Powe, and Enriquez were working as subcontracted security guards for GM Security at the time they arrested him. Moreover, it is undisputed that Powe and Enriquez were wearing full police uniforms and that McGuire identified himself as a police officer during the encounter with Pochoda. There was no indication whatsoever that they were working as subcontracted security guards and therefore no reason to suspect Pochoda knew as much. In short, GM Security was not in possession of any information suggesting that Pochoda was fully apprised of GM Security's role in the events leading up to his arrest. As such, GM Security should have known that Pochoda would have named it as a defendant but for some mistake concerning its existence or relationship to the individual Defendants. Therefore, the claim relates back to the date of the original complaint and is timely.

### C. Malicious Prosecution (State Law)

GM Security contends that it cannot be vicariously liable for the allegedly malicious criminal prosecution initiated against Pochoda because McGuire, Powe, and Enriquez were acting in their capacities as police officers, not as GM Security employees. This Court has previously considered and rejected the "one or the other" argument that either the county or the private employer, but not both, may be liable for the tortious actions of off-duty police officers employed as security guards at the time of the underlying events. *See Joseph v. Dillard's, Inc.*, No. CV-08-1478-PHX-NVW, 2009 WL 5185393, at *8-10, 2009 U.S. Dist. LEXIS 120577, at *24-27 (D. Ariz. Dec. 24, 2009). Rather, this Court concludes that traditional state agency principles in determining whether a particular employer is vicariously liable for the conduct of its employees. *Id.* GM Security has not addressed and therefore has not demonstrated the absence of genuine issues of material fact as to whether McGuire, Powe, and Enriquez were acting within the scope of their employment as security guards when the conduct underlying the malicious prosecution claim occurred.

IT IS THEREFORE ORDERED that Defendant GM Security and Consulting, LLC's Motion for Summary Judgment (doc. # 79) is denied. As to the defense of probable cause, the motion is denied without prejudice to timely refiling it in a motion for all Defendants represented by GM Security's counsel.

DATED this 10th day of June, 2010.

_____
Neil V. Wake
United States District Judge